**Opinion filed January 11, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00325-CR

_____

## CARLOS LORENZO GALLEGOS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR44618**

## M E M O R A N D U M   O P I N I O N

The jury convicted Carlos Lorenzo Gallegos of two counts of sexual assault of a child and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for terms of seven years and five years. Appellant challenges the sufficiency of the evidence supporting his convictions in two issues. We affirm.

*Background Facts*

In Count I, Appellant was charged with intentionally and knowingly causing the penetration of the anus of A.D., a child younger than seventeen, with Appellant's sexual organ. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West Supp. 2017). In Count II, Appellant was charged with intentionally and knowingly causing the penetration of A.D.'s sexual organ with Appellant's sexual organ. *See id.*

A.D. was seventeen at the time of trial. When she was younger, she used various social media outlets in an effort to find friends. She testified that Appellant contacted her through an app known as "Kik." Appellant told A.D. that he was eighteen or nineteen years old. A.D. later found out that Appellant was thirty-one.

Appellant and A.D. messaged each other for approximately one month. A.D. testified that Appellant eventually suggested that they should meet in person. Appellant also asked A.D. for a "selfie," which she sent to him, and he asked her to be his girlfriend. A.D. testified that she thought they were really close and that she thought Appellant loved her.

Because of his work schedule, Appellant wanted to meet A.D. at 2:00 a.m. A.D. testified that they met the first time in the early morning hours of December 13, 2013, near her home in Odessa. A.D. had just turned fifteen. Appellant wanted to take A.D. to his apartment, but A.D. was afraid to go there. Appellant then drove her around the corner and parked, at which time they moved to the backseat of his pickup. After hugging and kissing A.D., Appellant unzipped her sweater and grabbed her breasts. A.D. testified that Appellant touched and licked her "lady parts" and that he later started poking her with something really hard in her "lower parts." After this episode ended, Appellant and A.D. got dressed and he dropped her off near her home.[1]

---

[1]Given that the events of the first meeting presumably occurred in Ector County, we have not factored them into our analysis of the sufficiency of the evidence.

A.D. testified that her second meeting with Appellant occurred two weeks later. Appellant picked her up near her home in Odessa and drove her to his apartment in Midland. At the apartment, A.D. followed Appellant into a bedroom, and Appellant threw her onto the bed. Appellant got on top of A.D. and began kissing her. He then removed her clothes and kissed her body. A.D. testified that Appellant flipped her over and put his "man part" in her "butt." She testified that afterwards, Appellant placed his "man part" in her mouth. Appellant subsequently took A.D. back to her home in Odessa.

The third meeting between Appellant and A.D. occurred when Appellant picked her up near her home in Odessa between midnight and 2:00 a.m., and he drove her back to his apartment in Midland. Appellant first undressed A.D. and licked her "lady parts." A.D. testified that Appellant "was going to put it in my butt again" but that she told him it really hurt the previous time. Appellant told A.D. that he had something for that, at which time he applied "lube" to himself and then "put it in [A.D.'s] butt." Afterwards, Appellant took A.D. back home between 4:00 a.m. and 5:00 a.m.

A.D. testified that, prior to her fourth meeting with Appellant, she told him that she did not like engaging in anal sex. She testified that she had an agreement with Appellant to not do anal sex again. Once again, Appellant picked up A.D. near her house in Odessa and drove her to his apartment in Midland. At the apartment, Appellant removed A.D.'s clothes and kissed her all over her body. A.D. testified that Appellant told her "to get on his man parts," which she said meant putting his "man parts" in her "lady parts." A.D. testified to multiple occasions of Appellant placing his "man part" into her "lady parts."

A.D. also testified about a fifth meeting with Appellant at his apartment when he engaged in vaginal sex with her. This final episode ended when A.D. started

3

crying and informed Appellant that she wanted to go home. Appellant tried to meet with A.D. again, but she "was done." A.D. testified that Appellant tried to communicate with her afterwards but that she did not reply to his requests until October 2014 when they communicated via text messages.

A.D. did not realize it, but her text messages with Appellant also appeared on her father's iPad. Her sister found the text messages on the iPad and reported them to A.D.'s parents who then reported them to the police. A.D.'s mother, J.D., believed that A.D. and Appellant were discussing having sex in the text messages. J.D. called the other person's phone number, and Appellant answered.

Detective David Olvera with the Midland Police Department interviewed A.D. He was able to locate Appellant at the apartment complex that A.D. described to him. Detective Olvera also testified that the Kik app is often involved in his investigations of the sexual assault of children with older men using it to look for females under eighteen. Detective Olvera testified that, since eleven months had elapsed between the alleged conduct and the report to the police, he did not believe a sexual assault examination would have been beneficial. The State also called Donna Doyle, a sexual assault nurse examiner, as a witness. Doyle testified that unless a very traumatic injury occurs as a result of sexual activity, any other injury would heal in a matter of days. Doyle testified that she would not expect to find evidence of an injury caused by sexual activity ten to eleven months afterwards.

Detective Olvera interviewed Appellant. A recording of the interview was offered into evidence. When presented with A.D.'s name, Appellant denied knowing who she was. Detective Olvera then confronted Appellant with one of the text messages. Appellant said that he was communicating in the texts with someone whom he thought was nineteen and named "Lilly." Appellant denied having sex or meeting with the person that he knew as Lilly.

4

A transcript of the text messages between Appellant and A.D. was admitted into evidence. At one point, A.D. stated to Appellant, "I was a little whore." Appellant replied: "But you weren't a whore? You were just with me[.] I was the only one? Right?" A.D. replied: "I always wanted to save myself for marriage so to you it's not a big deal.[] To me it's a big deal." A.D. also commented that she would not be able to erase her feelings of "[t]he first time," "[t]he first time I was naked in front of a man," and "the first time I [have] ever been touched." Appellant replied: "You waited for me outside in the cold, you were shaking when you got in the truck. I just wanted to kiss you right away. I found you so beautiful. . . ." A.D. also commented about one episode when she cried because "it hurt when you went fast." Appellant replied: "I remember that. I felt so bad. :( I didn't like to see you cry. I think about the first time a lot. Like the actual first time. I think about how I should've made love to you."

Appellant testified in his own behalf during the guilt/innocence phase. He testified that he and A.D. became close friends online but that they never met in person. When cross-examined about the statements in the text messages referenced above, which indicated that he and A.D. had met and had sex, Appellant testified that he and A.D. were only engaging in role playing.

*Analysis*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a

5

reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction for Count I (anal penetration). In his second issue, he challenges the sufficiency of the evidence supporting his conviction for Count II (vaginal penetration). He presents the same contentions in support of both issues. He contends that the evidence supporting his convictions is insufficient because a sexual assault examination was not performed on A.D. after the police received the report. He also asserts that A.D.'s version of the events is suspect because she only made an outcry when confronted with the text messages. Appellant also contends that A.D.'s trial testimony contradicted what she initially told investigators.

We disagree with Appellant's assessment of the evidence. The uncorroborated testimony of a child victim is alone sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2017) (providing that, if victim is seventeen years of age or younger, requirement that

victim inform another person of alleged offense within one year does not apply); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd). Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found that Appellant committed sexual assault as alleged in both counts of the indictment. A.D. testified to occurrences of both anal penetration and vaginal penetration occurring in Midland County. The fact that she did not voluntarily report the sexual conduct is of little consequence as her text messages with Appellant indicated that she was trying to block it from her memory. Additionally, the applicable statute specifies that a person that is under seventeen is not required to make an outcry within any particular period of time. The State also offered testimony providing a rational explanation as to why a sexual assault examination was not performed ten to eleven months after the alleged sexual assaults.

To the extent that there were any inconsistencies or discrepancies in A.D.'s testimony, it was the jury's exclusive role to resolve those inconsistencies. We presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Thus, after considering the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of both counts of sexual assault beyond a reasonable doubt. We overrule Appellant's first and second issues.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE


January 11, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.